IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-01168-RBJ-KLM

GALE L. TAYLOR and
DOUGLAS K. WALSCH,

      Plaintiffs,

v.

CITY OF LONGMONT, COLORADO,
OFFICER BRIAN DEAN, in his personal capacity, and
OFFICER SARA AERNE, in her personal capacity,

      Defendants.

---

## ORDER

---

      This case is before the Court on motions for summary judgment by the City of Longmont and Officer Brian Dean [#45] and Officer Sara Aerne [#46].  The Court has considered the motions, plaintiffs' responses [#54, 55], and defendants' replies [#57, 58].

### Facts

      The story of this unfortunate case began on July 7, 2009 when Suzanne Mecalo and her mother Sierra Mecalo-Schwigen obtained a temporary civil protection order generally forbidding Gale Taylor from coming within 100 yards of them.  [#46-2].  The problems that led to the order are unknown to this Court, except that the centerpiece appears to be a narrow driveway that provides the only means of access to Ms. Taylor's home in Longmont, Colorado.  The driveway bisects the respective residential properties of the Mecalos.  Due to this necessary but unhappy

proximity, the protection order allowed Ms. Taylor to be within five yards of the Mecalos'
properties when she was at home so long as she had no contact with them.

On July 17, 2009, the evening before the parties were to return to court for the permanent
protection order hearing, Ms. Taylor's friend, Douglas K. Walsch, stopped by to help her with an
electrical problem and to cheer her up, as she had recently had bunionectomy surgery and was
still in pain.  Ms. Taylor had been feeling cooped up in her home, and Mr. Walsch decided to
take her out to dinner.  He had left his car in a shady spot on the narrow driveway, facing
inwards from the street.  He did not feel comfortable backing out, due he says to a neck injury
that made turning his neck a problem.  So, with Ms. Taylor in the passenger seat, he made the
unfortunate decision to back into one of the Mecalo's private driveways in order to turn around.

This maneuver was detected and indeed photographed [#46-4] by a vigilant Mecalo.
Realizing that Ms. Taylor, albeit a passenger in the car, had momentarily crossed the five-yard
line, Ms. Mecalo called the Longmont police to report a violation of the temporary civil
protection order.

Perhaps it was a slow night in the Longmont Police Department.  In any event, in the wee
hours of July 18, 2009 Officers Brian Dean and Sara Aerne were dispatched to investigate the
alleged violation.  Having seen the photograph and determined that probable cause existed for a
warrantless arrest of Ms. Taylor, the two officers knocked on the door and requested entry.  Mr.
Walsch, who had remained in the home after the two returned from dinner, answered the door,
informed the officers that Ms. Taylor was asleep, and advised them to return in the morning.
That was not acceptable, and after what he describes as a threat to break the door down, Mr.
Walsch let them into the house.

Ms. Taylor had dozed off in the living room but was awakened by the commotion. She was somewhat groggy, probably due to her having been asleep and her having taken pain medicine. According to the plaintiffs, Officer Aerne demanded to know whether she was drunk, screaming at the top of her lungs. However unlikely that might seem, it is at least agreed that Officer Aerne was satisfied that intoxication was not an issue, and things calmed down a bit.

None of this sat well with Mr. Walsch, who thought that the police should respect Ms. Taylor's condition and allow her to turn herself in in the morning. Fearing that Mr. Walsch's agitation could lead to trouble, Officer Dean had him move to a comfortable distance from Ms. Taylor and Officer Aerne and stood between them, forcing Mr. Walsch to have to crane his neck to see what was going on. That brings us to the incidents that have turned these events into a federal case.

<u>Ms. Taylor</u>

According to affidavits of Ms. Taylor and Mr. Walsch, Officer Aerne placed Ms. Taylor in handcuffs while they were all still inside Ms. Taylor's home. [##54-1 and 54-2]. Mr. Walsch has testified by deposition that during this process Officer Dean several times ordered Officer Aerne to make the cuffs tighter, which Officer Aerne obeyed to the point that Ms. Taylor was screaming out in pain and beginning to black out. [#46-1] at 24. The Longmont Police medical report indicates that Ms. Taylor did not have any injuries or conditions that required treatment when she was brought in on the night of the arrest. [#46-11] at 2. However, on July 21, 2009 Ms. Taylor was diagnosed by a physician's assistant, based on her subjective report of being handcuffed and sustaining right wrist soreness, with a wrist sprain. [#46-15] at 3.

Officer Aerne's version is quite different. In her affidavit [#46-5] she states that she escorted Ms. Taylor out of the house to the patrol car uncuffed. She tightened the cuffs to the point that she could place a finger between the cuff and Ms. Taylor's wrist. Mr. Walsch

complained that she was tightening the cuffs too tight and loudly (and presumably sarcastically) stated that Officer Aerne should tighten them enough to leave scars.  She replied that she was only tightening them enough to prevent them from falling off.  Ms. Taylor did not say anything about the cuffs.  Officer Dean did not demand that she tighten the cuffs and was not involved in the process at all.  *Id.* ¶¶15-18.  Officer Dean confirms these statements in his affidavit.  [#46-6] ¶¶10, 11, 13.

The defendants have presented a disc containing what they say is an audio recording of the cuffing process [#46-12], together with a transcript of the recording.  [#46-9]  The recording is muffled and unintelligible in places, but if it is what defendants claim it to be, it tends to support the defendants' version of what happened.  The defendants have also provided a transcript of a recorded telephone conversation between Sgt. Ross of the Longmont Police Department and Ms. Taylor during which she stated that the cuffing process occurred outside and in a manner that she believed was "putting on a show" for the Mecalos who were presumed to have been watching.  [#46-10] at 19.

Mr. Walsch

Mr. Walsch has testified that as Ms. Taylor was screaming from the pain of the too-tight handcuffs, he asked Officer Aerne to stop hurting her and made hand motions as if to say, "I can't believe you're doing this to her."  [#46-1] at 26.  He states that Officer Dean then lunged at him, punched him in the chest with both fists, and knocked him back a few steps.  *Id.* at 26-27. He went to the Longmont Clinic on July 21, 2009 where he reported that he had been punched on the sternum by a police officer.  No visible bruising was noted.  [#45-13] at 17.  Further examination, apparently at the Longmont United Hospital on that date, revealed no cracked ribs, and he was diagnosed with a chest contusion.  [#45-13] at 2, 4, 8.  He went to the Longmont

Clinic on July 24, 2009, again complaining of chest pain caused by being punched in the chest in a scuffle with police, and prescribed a pain medication.  *Id.* at 16.

In his affidavit Officer Dean describes a rather different sequence.  He states that Mr. Walsch became agitated as Ms. Taylor was being handcuffed, got red in the face, balled his fists, and stepped toward him.  Officer Dean put out his hands straight-armed, fingers pointing up in the air, and Mr. Walsch leaned against his palms.  He then pushed Mr. Walsch in the chest, causing him to step back a step or two.  [#46-6] ¶12.

Lawsuit

Plaintiffs brought this lawsuit under 42 U.S.C. § 1983 against both officers and the City of Longmont, alleging that the use of excessive force in making the arrest of Ms. Taylor and the use of "gratuitous force" against Mr. Walsch violated their respective rights under the Fourth Amendment to the United States Constitution, and that the City of Longmont as the employer and principal of the officers is jointly and severally liable for their conduct.  Complaint [#1] ¶¶29-35.  Defendants move for summary judgment, contending that the claims against the officers are barred by "qualified immunity," and that the claim against the City must be dismissed because plaintiff has no evidence of an unconstitutional practice or policy.

**Standard**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

<u>**CONCLUSIONS**</u>

**City of Longmont**

"[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents.  Instead it is when execution for a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978).  Therefore, in order to establish municipal liability, the plaintiffs must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."  *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997) (internal citation omitted).

Plaintiffs have alleged no facts in their complaint that establish either a municipal custom or policy or a link between such policy and the alleged violations.  They likewise do not address the City's argument in their response.  Instead, they have essentially asserted simple *respondeat superior* type liability, which is inapplicable to a § 1983 claim.  The City's motion for summary judgment is granted, and the claims against the City are dismissed with prejudice.

**Officer Brian Dean**

As Judge Gorsuch observed in *Porro v. Barnes,* 624 F.3d 1322, "[o]ur first task in any §

1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with

which [the defendant] is charged.'" *Id.* at 1325 (citation omitted).  Although the Complaint is

less than clear, it appears that plaintiffs are claiming that Officer Dean (1) violated Ms. Taylor's

Fourth Amendment rights by participating in the use of excessive force in the arrest of Ms.

Taylor by ordering Officer Aerne to tighten the handcuffs to the point of extreme pain, and (2)

violated Mr. Walsh's Fourth Amendment rights by using "gratuitous force" against him.

   1.  Ms. Taylor's claim against Officer Dean.

The use of excessive force while making an arrest deprives a citizen of her Fourth

Amendment right to be secure against an unreasonable seizure.  *See, e.g., Graham v. Connor,*

490 U.S. 386, 394 (1989).  Whether excessive force was used is governed by an "objective

reasonableness" standard.  *Cavanaugh v. Woods Cross City,* 625 F.3d 661, 664 (10th Cir. 2011).

The reasonableness is to be judged from the perspective of a reasonable officer, taking into

consideration such factors as "the severity of the crime at issue, whether the suspect poses an immediate

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

evade arrest by flight." *Graham,* 490 U.S. at 396.  The violation of a protective order, particularly

in the manner alleged here, was not a severe crime.  Ms. Taylor posed no threat to the officers'

safety, nor was she actively resisting arrest.

The force used in handcuffing an arrestee can be determined to be excessive.  *Fisher v.

City of Las Cruces,* 584 F.3d 888, 894-95 (10th Cir. 2009).  *See also Koch v. City of Del City*, 660

F.3d 1228, 1247 (10th Cir. 2011)("In cases in which the handcuffing is permissible yet the *manner* of

handcuffing may render the application of force excessive, the *Graham* factors are less helpful in

evaluating the *degree* of force applied.").  Given the lack of severity of the crime and lack of a threat to the officers or resistance to the arrest, if Officer Aerne did, in fact, tighten the handcuffs to the point that Ms. Taylor suffered extreme pain, verged on passing out, and sustained an injury to her wrist, then a reasonable jury could find that excessive force in violation of her Fourth Amendment rights was used.

The concept of excessive force in the handcuffing of an arrestee has easier application to Officer Aerne than to Officer Dean.  No one suggests that Officer Dean physically participated in the cuffing process.  "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement."  *California v. Hodari D.,* 499 U.S. 621, 626 (1991)(holding that a "show of authority" by an officer pursuing an individual suspected of narcotics transactions did not constitute a seizure where there was no application of physical force and the suspect did not yield).  In this instance, however, Officer Dean is accused of participating in the handcuffing by instructing Officer Aerne several times to tighten the handcuffs, which instructions she is said to have followed to the point of causing extreme pain and injury.  This Court holds that if Officer Dean did what he is accused of doing, it could constitute participation in the application of excessive force during an arrest, and a reasonable jury could find that he participated in the violation of Ms. Taylor's rights.

Officer Dean asserts qualified immunity as a defense.  The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal citations omitted).  To overcome summary judgment based on qualified immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue."  *Steffey v. Orman,* 461 F.3d 1218, 1221 (10th Cir. 2006).

As indicated above, the use of excessive force while handcuffing an individual can constitute the violation of a constitutional right.  Even in a case involving the use of excessive force, the second prong of the qualified immunity defense must be established.  *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  In *Hannula v. City of Lakewood*, 907 F.2d 129, 132 (10th Cir. 1990) the court noted that the case law does not clearly establish that handcuffing a detainee too tightly constitutes excessive force, "at least in the absence of apparent physical damage to the plaintiff's wrists."  However, in the present case there is at least an allegation that Officer Aerne's tight handcuffing caused physical injury to Ms. Taylor's wrists.  The Tenth Circuit has held that "in some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."  *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208-09 (10th Cir. 2008) (internal citations omitted).

Moreover, a right can be considered to be clearly established if "it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented."  *Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009).  This Court finds that a reasonable officer would understand that tightening handcuffs to the point of causing extreme pain and injury would be unlawful.

Officer Dean denies that he told Officer Aerne to tighten the handcuffs or that he was in any way involved in the cuffing process.  As indicated above, there is evidence that tends to support the credibility of his denials.  However, this Court cannot make credibility assessments in ruling on a summary judgment motion.  This Court's job is to determine whether there is a genuine issue of material fact in dispute.  Both parties have supported their respective versions of the facts with affidavits and/or deposition testimony.  That is where the Court's inquiry must end.

2.  <u>Mr. Walsch's claim against Officer Dean</u>.

Officer Dean certainly had the right to separate Mr. Walsch from Officer Aerne and Ms. Taylor.  If Mr. Walsch was agitated, balling his fists, and making threatening gestures or movements, Officer Dean surely had the right to use reasonable force to keep him at bay.  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).

Officer Dean denies that he used excessive force and asserts qualified immunity as a bar to further prosecution of this claim.  However, it is not disputed that the use of excessive force against a citizen, even as in this case not the citizen being arrested, could sustain a Fourth Amendment violation.  *Cf. Terry v. Ohio,* 391 U.S. 1, 19-20 (1968).  <u>If</u>, as Mr. Walsch claims, Officer Dean lunged at him without provocation, struck him with balled fists in the chest, knocked him back and caused a permanent injury to his chest and spine, then a reasonable jury could find that conduct to be excessive.  Further, the Court finds that a reasonable police officer would know that the use of that degree of force on a citizen without provocation would be unlawful.  Therefore, the existence of a genuine fact dispute, supported on both sides by affidavits and/or deposition testimony, precludes the application of qualified immunity on a motion for summary judgment.

**Officer Sara Aerne**.

For the reasons discussed above regarding Ms. Taylor's claim against Officer Dean, her allegation that Officer Aerne used excessive force while arresting her by tightening the handcuffs to the point of extreme pain and injury states a claim that could support a finding of a violation of Ms. Taylor's Fourth Amendment rights.  The parties have presented evidence of genuine

dispute of material fact regarding where the handcuffing took place, whether the cuffs were tightened beyond that which was necessary to keep them from slipping off, whether Ms. Taylor complained about their tightness, and whether she sustained any injury. The fact disputes preclude the Court from granting summary judgment on Officer Aerne's qualified immunity defense.

Mr. Walsch has clarified that he did not intend to assert a claim against Officer Aerne, and that Officer Aerne did nothing to him. [#45-1] at 144. Counsel has confirmed that in plaintiff's response to Officer Aerne's summary judgment motion. Accordingly, the only claim against Officer Aerne is that of Ms. Taylor.

**The effect of Ms. Taylor's Bankruptcy**

Ms. Taylor filed a voluntary petition for bankruptcy on October 13, 2010, five months after the present case was filed. In that petition, Ms. Taylor reported the value of her "lawsuit against police for pain and suffering" at $10,000. Defendants now seek to have this court judicially estop Ms. Taylor from seeking or being awarded damages in excess of $10,000. Ms. Taylor's disclosure was her personal assessment of the value of her claim at the time. Ms. Taylor did not conceal her claim from the bankruptcy court, and there is no evidence that Ms. Taylor misreported her claim in order to mislead her creditors. Should Ms. Taylor recover in excess of $10,000, she will need to disclose the recovery to the bankruptcy court and trustee. The Court has not found, and defendants have not cited, any case law that indicates that a disclosure on a bankruptcy petition limits the amount a plaintiff can recover in a separate personal injury action. Therefore, that aspect of defendant's motion is also DENIED.

**Order**

For the foregoing reasons:

1. Motion #45 is GRANTED IN PART (as to the City of Longmont) and DENIED IN

   PART (as to Officer Brian Dean).

2. Motion #46 is DENIED.

   DATED this 28th day of March, 2012.

                                        BY THE COURT:

                                        _____

                                        R. Brooke Jackson
                                        United States District Judge